UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
GLORIA BRANDES,                                    :
                                                   :
                                Plaintiff,         :
                                                   :       MEMORANDUM AND
                    -against-                       :       ORDER
                                                   :
STEVEN MADDEN, LTD.,                               :       No. 24-CV-73-LDH-JRC
                                                   :
                                Defendant.         :
                                                   :
-------------------------------------------------------------------- x

JAMES R. CHO, United States Magistrate Judge:

Plaintiff Gloria Brandes ("plaintiff" or "Brandes") commenced this action against Steven

Madden, Ltd., ("defendant" or "Madden"), for alleged breach of the Earn-Out provisions of a

Stock Purchase Agreement ("the SPA") that effectuated the sale of Brandes' business, BB

Dakota, to Madden (the "Acquisition").[1]  *See generally* Compl., Dkt. 1.  Specifically, the parties

dispute the earnout paid by Madden in 2023 (referred to as the Year 3 Earnout payment) under

the SPA.  Now pending before this Court is a dispute concerning documents Brandes has

withheld based on privilege as set forth in Brandes' privilege logs.  *See* Dkt. 69 (initial motion to

compel); Dkt. 92-8 (renewed motion to compel).[2]

## Background

The Court assumes the parties' familiarity with the factual and procedural background of

this case. As such, only the factual and procedural background relevant to the instant motion is

discussed below.

---

[1] The SPA entered into between Brandes and Madden on August 12, 2019 effectuated the sale of Brandes' women's apparel company, BB Dakota, to Madden.  Following the Acquisition, BB Dakota became part of Madden.
[2] References to the page numbers generated by the Court's electronic case filing system appear as "ECF page."

On March 28, 2025, Madden filed a letter motion seeking to compel Brandes to produce documents withheld based on the attorney-client privilege and work product doctrine as set forth in Brandes' privilege logs. Dkt. 69. On April 8, 2025, Brandes filed a response stating that Brandes would produce a number of documents in an attempt to narrow the scope of the discovery dispute and provide Madden with an updated privilege log. Dkt. 71. On April 11, 2025, Madden filed a reply in support of its letter motion. Dkt. 73. Notwithstanding Brandes' supplemental production, Madden responded that the discovery dispute remained as to the following groups of documents: documents and communications exchanged with and created by Brandes' accountants – Holthouse, Carlin and Van Tright LLP ("HCVT"); and documents and communications exchanged with and created by Brandes' former colleagues and friends (*e.g.*, Pat Strayer, Corey Gionet and Ann Fong). Dkt. 73; *see also* Dkt. 69; Dkts. 89-1 and 89-12 (reiterating the dispute over the privileged documents in the parties' joint status report).

At a hearing on April 30, 2025, the Court heard argument on Madden's letter motion (Dkt. 69) and ordered the parties to meet and confer regarding the documents that Brandes claims to be protected by the attorney-client privilege or the work product doctrine including communications with Brandes' accounting firm and communications with Brandes' former colleagues. *See* Min. Entry dated Apr. 30, 2025. The Court further ordered the parties to file a joint discovery letter by May 6, 2025 regarding any privileged documents that remain in dispute and to attach a list of the at-issue documents contained in Brandes' privilege logs. *See id*.

On May 6, 2025, the parties filed a joint letter reporting that they were unable to resolve their dispute as it relates to the privileged documents. Dkt. 92. Madden renewed its motion to compel Brandes to produce documents[3] improperly withheld or redacted based on attorney-client

---

[3] Brandes advised Madden that it would "produce some additional documents" in response to the renewed motion to compel. Dkt. 92-8 at 1.

privilege or work product grounds (*i.e.*, pre-2023 communications and communications exchanged with third-parties). Dkt. 92-8 at 1. Brandes separately filed a letter to respond to Madden's objections, continuing to assert that the documents were protected. Dkt. 93. As set forth in Brandes' opposition, "Madden's principal objection is that Brandes cannot withhold communications between Brandes and HCVT in 2023." In response, Brandes argues that communications between Brandes and HCVT in 2023 are "work product." Dkt. 93 at 1. Brandes "anticipated litigation no later than May 8, 2023" and, Brandes argues, "[h]er confidential communications with HCVT after May 8, 2023, for the purpose of investigating her claims, are thus immune from discovery." Dkt. 93 at 2.

On May 7, 2025, the Court heard oral argument on Madden's renewed motion to compel. *See* Min. Entry dated May 7, 2025. The Court ordered Madden to identify a subset of the communications between plaintiff and her accounting firm for the Court to review *in camera*.[4] *See id*. The Court ordered Brandes to file those documents under seal as well as documents Brandes had withheld involving plaintiff's friends or colleagues. *Id.* Brandes thereafter filed privilege logs and documents for the Court's *in camera* review. *See* Dkts. 95 (privilege logs), 96 (same), 97 (documents for *in camera* review).

On July 21, 2025, after receiving Brandes' documents for *in camera* review, the Court requested further briefing on Madden's motion to compel. *See* Order dated July 21, 2025. Specifically, the Court ordered the parties to address the following issues:

> 1. The basis for plaintiff's position that communications from 2019 (approximately four years before the instant dispute arose), that were not prepared by an attorney, are protected by the work product doctrine. *See* Dkt. 95 Ex. A ("Disputed Pre-2023 'Work Product' Documents"); *id*. Ex. B ("Disputed Pre-2023 'Work Product' and 'Attorney Client Privilege' Documents").

---

[4] The Court also granted plaintiff leave to identify additional documents for the Court's *in camera* review. Min. Entry dated May 7, 2025.

2. The basis for plaintiff's position that post-2023 communications between plaintiff and her former colleagues, which do not include attorneys or attorney analysis, are protected by the work product doctrine. *See* Dkt. 95 Ex. E ("Disputed Post-2023 'Work Product' Documents with Third Parties").

3. With respect to communications with B.B. Dakota, Inc.'s former accounting firm, Holthouse, Carlin and Van Tright LLP ("HCVT"), the basis for plaintiff's position that the advice sought was legal advice rather than accounting advice.

4. The basis for plaintiff's position that retainer agreements and attorney invoices are privileged.

*Id.*

On July 28, 2025, Brandes responded to the questions from the Court. Dkt. 119. With respect to Question No. 1, Brandes stated that she was not asserting that non-attorney documents prepared in 2019 are protected by the work product doctrine. Brandes advised the Court that she had "inadvertently identified" documents on her privilege log as protected under the work product doctrine. Dkt. 119 at 1 ("the work-product designation was a clerical error."). Instead, Brandes confirmed that the documents identified in Exhibits A and B (Dkt. 95) are protected by the attorney-client privilege. Dkt. 119 at 1.

With respect to Question No. 2, Brandes advised the Court that she was not asserting work product protections as to any post-2023 communications with Brandes' former colleagues. Dkt. 119 at 2. However, Brandes redacted parts of those documents that included counsel or counsel's analysis that she considered work-product or privileged communications. Dkt. 119 at 2; Dkt. 119-1 (with redactions).

With respect to Question No. 3, Brandes advised the Court that she was not asserting that she sought legal advice from HCVT in 2023, but that any communications are protected as work product because they were prepared in anticipation of litigation. Dkt. 119 at 2. Finally, with respect to Question No. 4 regarding retainer agreements and attorney invoices, Brandes stated that she had included those documents in the privilege logs inadvertently and advised the Court

4

that she would remove those entries.  On August 4, 2025, Madden filed its response, Dkt. 121, and on August 7, 2025, Brandes filed her reply.  Dkts. 122-1, 140 (same).

In light of the corrections identified in Brandes' response (Dkt. 119) to the Court's follow-up questions, at a hearing on August 20, 2025, the Court ordered Brandes to file revised privilege logs to reflect only the at-issue documents.  *See* Min. Entry dated Aug. 20, 2025; Dkt. 119.  On August 27, 2025, Brandes filed revised privilege logs.  Dkt. 131.[5]  On September 19, 2025, the Court ordered Brandes to submit for the Court's *in camera* review the updated set of documents identified in her revised privilege logs (Dkt. 131).  Min. Entry dated Sept. 19, 2025.  Further, pursuant to this Court's Order on October 3, 2025, the revised privilege logs (Dkt. 131) and documents for *in camera* review were filed under seal on ECF on October 8, 2025 (Dkt. 141) (operative documents and revised privilege logs).

## Legal Standards

### I.    Attorney-Client Privilege

Usually, in cases brought pursuant to this Court's diversity jurisdiction, the Court looks to state privilege law.  *See Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.*, No. 18-CV-4921, 2021 WL 1930294, at *2 (S.D.N.Y. May 13, 2021); *see also* Fed. R. Evid. 501 ("in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision").  The Court's subject matter jurisdiction in this case is based upon diversity of citizenship, so New York law applies.  Here, however, the parties do not raise the choice of law issue nor do they argue that there are any differences between New York and federal attorney-client privilege.  In fact, the parties cite almost exclusively to federal caselaw in their papers,

---

[5] On September 16, 2025, plaintiff advised the Court that Madden also had noted in its privilege log a number of communications between Madden's accounting firm (Ernst & Young) that Madden had withheld based on attorney-client privilege.  Dkt. 134.

which constitutes implied consent to federal privilege law. *See GMO Gamecenter USA, Inc. v. Whinstone US, Corp.*, No. 22-CV-5974, 2025 WL 1763262, at *3 (S.D.N.Y. June 25, 2025) (noting where parties did not raise the choice of law issue and only cited to federal case law, parties consented to federal privilege law) (citing *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000)). As such, the court will apply federal privilege law.

The attorney-client privilege protects communications between client and counsel made for the purpose of obtaining or providing legal advice that was intended to be and in fact kept confidential. *See In re County of Erie*, 473 F.3d 413, 418–19 (2d Cir. 2007); *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996). The privilege is intended to encourage full and frank communications between a client and counsel, which in turn promotes an understanding of and compliance with the law and the administration of justice. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The privilege is narrowly construed, however, because it renders relevant information undiscoverable. *Fisher v. United States*, 425 U.S. 391, 403 (1976); *In re County of Erie*, 473 F.3d at 418.

## II.    Work Product Doctrine

The work product doctrine protects documents and tangible things prepared by a party or the party's attorney in anticipation of litigation. *See* Fed. R. Civ. P. 26(b)(3). Whether the work product doctrine applies to particular documents or materials turns on "whether [they] were prepared 'with an eye toward' or 'in anticipation of' or 'because of the prospect of litigation.'" *Pearlstein v. Blackberry Ltd.*, No. 13-CV-7060, 2019 WL 1259382, at *5 (S.D.N.Y. Mar. 19, 2019).

**Discussion**

Having reviewed the documents at issue *in camera*, Dkt. 141, the Court finds that a number of the documents were not properly withheld or redacted under a claim of attorney-client privilege or as protected work product.  Because the Court has reviewed only the sample of documents filed by plaintiff *in camera*, the findings herein should be applied to duplicates and near duplicate documents.  Similarly, Brandes should apply other principles stated herein in a re-review of withheld documents that the Court anticipates may result in a supplemental production of documents initially withheld as privileged.

Plaintiff's revised privilege logs[6] (Dkt. 141), separated into five exhibits (Exhibits A–E), reflect the documents provided to the Court for *in camera* review.  Exhibits A–C contain pre-2023 documents and Exhibits D–E contain documents from 2023 and 2024.  Each group of documents is discussed in turn.

## I.    Pre-2023 Communications

Exhibits A–C of Brandes' revised privilege logs identify communications with Brandes, her attorneys, and accountants from the accounting firm HCVT and involve discussions, *inter alia*, about the negotiations surrounding the SPA.  *See* Dkts. 141-1 (Ex. A) ((Revised) Disputed Pre-2023 Work Product Documents), 141-2 (Ex. B) ((Revised) Disputed Pre-2023 "Work Product" and "Attorney Client Privilege" Documents), 141-3 (Ex. C) ((Revised) Disputed Pre-2023 "Attorney Client Privilege" Documents with Third Parties).  Documents in Exhibits A, B,

---

[6] Brandes' privilege logs Exhibits A through E have undergone a number of iterations after Madden first filed its motion to compel production of the privileged documents.  The Court considers the privilege logs and attached exhibits filed on October 8, 2025, Dkt. 141, as the operative revised privilege logs and exhibits.  Brandes had previously filed a redlined version of the logs, Dkt. 131, setting forth the edits presumably reflected in the revised privilege logs at Dkt. 141.  The Court notes, however, minor discrepancies between the redlined version of Brandes' privilege logs (Dkt. 131) and the revised privilege logs filed under seal for the Court's *in camera* review (Dkt. 141).  For example, document number 298 referenced in Exhibit E in the redlined version (Dkt. 131) does not appear in the version of Exhibit E filed under seal (Dkt. 141).  Regardless, the Court relies on the revised privilege logs and exhibits filed under seal at Dkt. 141 for purposes of ruling on defendant's renewed motion to compel.

and C are marked as privileged because of either attorney-client privilege or attorney-client privilege and work product.  Dkts. 141-1, 141-2, 141-3.

### A.    Attorney-Client Privilege

Brandes now asserts that all communications in Exhibits A–C are protected by the attorney-client privilege (with a select number of documents also designated as protected work product).  Dkt. 119 at 1.  Brandes argues that the presence of accountants on emails and emails from accountants to Brandes and her counsel does not waive the attorney-client privilege.  Generally, the attorney-client privilege "forbids an attorney from disclosing confidential communications that pass in the course of professional employment from client to lawyer."  *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989).  There are exceptions, however, that allow communications involving certain agents of an attorney to be covered under the privilege.  *Id.*

In *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961), the Second Circuit extended the attorney-client privilege to communications with third parties that are "necessary, or at least highly useful, for the effective consultation between the client and the lawyer."  Specifically, the Court determined that communications between a client and an accountant employed by the client's lawyers may be protected by the attorney-client privilege.  *Id.* at 919, 921–22.  The Court reasoned that an attorney's use of an interpreter to translate for a client who speaks a foreign language would not waive the privilege, thus, because accounting "concepts are a foreign language" to some attorneys, an accountant's presence "while the client is relating a complicated tax story to the lawyer[] ought not to destroy the privilege."  *Id.*

Courts have narrowly construed the exception to third-party waiver recognized in *Kovel*.  Importantly, the privilege extends to a communication disclosed to a third party only "if the

purpose of the third party's participation is to improve the comprehension of the communications between attorney and client." *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999); *see also In re Refco Sec. Litig.*, 280 F.R.D. 102 (S.D.N.Y. 2011) (finding privilege was waived by disclosure to an agent where "it appears that [the attorney] relied on [the agent's] experience and specialized knowledge," "[w]hat does not appear . . . is any evidence that there was information [the attorney] *could not understand* without [the agent] translating or interpreting raw data for him" (emphasis in original)). The Second Circuit in *Kovel* distinguished between accountants hired to aid attorneys in understanding "[a]ccounting concepts," and those hired to perform "only accounting service." *Kovel*, 296 F.2d at 922. If the advice being sought is "the accountant's rather than the lawyer's," no privilege attaches. *Id.*

Brandes claims that communications involving herself, her attorneys, and the accountants of HCVT are protected by the attorney-client privilege. According to Brandes, the privilege applies to communications with BB Dakota's employees and/or agents for the purpose of soliciting legal advice from Brandes' deal counsel about the drafting and negotiation of the SPA or collecting information to provide to counsel. Dkt. 122-1 at 2. In support, Brandes relies on cases where the court found the attorney-client privilege to protect communications among employees at the same company. *See Robinson v. De Niro*, No. 19-CV-9156, 2022 WL 704922, at *5 (S.D.N.Y. Mar. 9, 2022); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-md-2542, 2019 WL 6736132, at *5 (S.D.N.Y. July 22, 2019), *report and recommendation adopted*, 2019 WL 4359551 (S.D.N.Y. Sept. 12, 2019).

Here, the communications at issue are among Brandes, BB Dakota employees, and an *outside* accounting firm, HCVT. The support that Brandes cites for the proposition that the attorney-client privilege may extend to communications among employees of the same company

9

does not apply.  Instead, Brandes may rely on designating HCVT as an "agent," but HCVT must then still fall within *Kovel*'s exception for the Court to not find third-party waiver.  "For the *Kovel* rule to apply, the attorney must have been relying on the third-party advisor 'to translate or interpret information given to [the attorney] by his client[,]' not to provide information that the client did not already have."  *Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, 19-CV-9193, 2023 WL 315072, at *8 (S.D.N.Y. Jan. 19, 2023) (quoting *Ackert*, 169 F.3d at 139–40).

Here, the majority of the communications contained in Exhibits A, B, and C of Brandes' revised privilege logs, Dkt. 141, involving Brandes, HCVT, and Brandes' counsel do not fall under *Kovel*'s rule protecting communications involving clients, their attorneys, and accountants. Brandes' assertions that HCVT are acting as agents of Brandes "cannot magically transform routine corporate accounting work into a protected *Kovel* relationship."  *United States v. Hatfield*, No. 06-CR-0550, 2010 WL 183522, at *2 (E.D.N.Y. Jan. 8, 2010).  In these communications, HCVT provides Brandes and her counsel with new information regarding the accountant's own assessment of the SPA.  HCVT provides accounting services and was not hired to aid Brandes' deal counsel in understanding the accounting concepts tied to SPA negotiations. *See Kovel*, 296 F.2d at 922; *see also United States v. Watson*, No. 23-CR-82, 2024 WL 3202765, at *7 (E.D.N.Y. June 27, 2024).  With few exceptions listed below, any discussions involving Brandes, her counsel, and HCVT do not pertain to HCVT acting as a translator for counsel to understand Brandes' communications and therefore do not fall under *Kovel*'s exception.

The disclosure of attorney-client communications between Brandes and her attorneys that HCVT was either originally included in or later copied on constitutes third-party waiver and these communications are not protected by the attorney-client privilege.  *See In re Horowitz*, 482 F.2d 72, 81 (2d Cir. 1973) ("[S]ubsequent disclosure to a third party by the party of a

10

communication with his attorney eliminates whatever privilege the communication may have originally possessed, whether because disclosure is viewed as an indication that confidentiality is no longer intended or as a waiver of the privilege."); *see also In re Asia Glob. Crossing, Ltd.*, 322 B.R. 247, 261-62 (S.D.N.Y. 2005) (holding e-mail chains between a client and its counsel not privileged after they were sent to third parties).

### B. Work Product

On Brandes' revised privilege logs, many of the pre-2023 documents are marked as withheld or redacted because of attorney-client privilege *and* work product. Dkts. 141-1 (Ex. A), 141-2 (Ex. B), 141-3 (Ex. C). Madden argues that these communications, occurring between 2019 and 2022, were prepared well before this current lawsuit arose or was reasonably anticipated. *See* Dkt. 69 at 1. In supplemental briefing, Brandes states that she "does ***not*** assert that non-attorney documents prepared in 2019 are protected by the work product doctrine." Dkt. 119 at 1 (emphasis in original). Confusingly, Brandes has still labeled a number of pre-2023 documents as protected by both the attorney-client privilege and work product doctrine. Brandes herself states that litigation was not contemplated until May 8, 2023 after Brandes learned about her 2022 earn-out payment from her counsel. Dkt. 119 at 3; Dkt. 93 at 1 (Brandes anticipated litigation with Madden "no later than May 8, 2023.").[7] These pre-2023 communications cannot be protected by the work product doctrine when no litigation was anticipated at that time. *See Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 449 (S.D.N.Y. 1995) (documents created in "furtherance of a business transaction" and not in anticipation of litigation are not protected by the work product doctrine).

---

[7] The disputed earnout was calculated in the first quarter of 2023. Dkt. 69 at 1.

Accordingly, all documents in Exhibits A and C and the following documents in Exhibit B are communications involving Brandes, her counsel, and HCVT that do not satisfy the *Kovel* exception and must be produced unredacted by plaintiff:

Exhibit A: WAIVE0008138, WAIVE0015285, WAIVE0016181, WAIVE0017203, WAIVE0017393, WAIVE0017396, WAIVE0018134, WAIVE0028060, WAIVE0028399, WAIVE0031271, WAIVE0031272, WAIVE0032682, and WAIVE0032685.

Exhibit B: 98, 99, 104, 105, WAIVE0015250†, WAIVE0030119†, WAIVE0032689, and WAIVE0032691.

Exhibit C: WAIVE0028548, and WAIVE0028550.

The following documents in Exhibit B, however, contain communications involving Brandes, counsel, and HCVT that satisfy the *Kovel* exception, meaning HCVT is acting as a translator for Brandes' counsel, and the Court finds that plaintiff properly withheld these communications as protected by the attorney-client privilege:

Exhibit B: 148, 150, 152, 153, 155, 156, WAIVE0017868†, and WAIVE0021587†.

## II.    Post-2023 Communications

Exhibits D and E contain entries for documents created in 2023 and 2024.  *See* Dkts. 141-4 (Ex. D) ((Revised) Disputed Post-2023 Attorney Client Privilege Docs with Third Parties); 141-5 (Ex. E) ((Revised) Disputed Post-2023 Work Product Docs with Third Parties)).  Disputes over these documents arise from privilege claimed over communications between Brandes and her former colleagues and communications involving Brandes, counsel, and HCVT.

### A.    Communications Between Brandes and Former Colleagues

Brandes initially argues that communications between herself and former employees of BB Dakota created post-2023 contain privileged communications.  Dkt. 119 at 2.  Now, Brandes claims that any communications between Brandes and her former colleagues that did not contain

12

counsel or counsel's analysis were produced. *Id.* Madden counters, however, that even the portions containing communications with counsel are not protected by attorney-client privilege because the presence of Brandes' friends and former colleagues means that privilege has been waived. Dkt. 121 at 3.

The Court's *in camera* review reveals that the redacted portions largely do not contain communications with counsel, and instead are communications between Brandes and HCVT. Dkt. 141-5 (Ex. E). A number of these communications are protected by the work product doctrine, as discussed below.

> **B.     Post-Acquisition Communications with Brandes, Counsel and HCVT**

Brandes claims that communications involving herself, her counsel, and HCVT in 2023 are protected by the attorney-client privilege and work product doctrine. Dkt. 141-4 (Ex. D). For the work product doctrine to apply, the material in question must: "(1) be a document or tangible thing, (2) which was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for its representative." *Compagnie Francaise d'Assurance Pour le Com. Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 41 (S.D.N.Y. 1984). Brandes argues that because Rule 26(b)(3) of the Federal Rules of Civil Procedure provides that a party's "representative" may include an "attorney, consultant, surety, indemnitor, or agent," HCVT must be considered Brandes' "agent." Further, Brandes claims that it is immaterial whether HCVT created a document at the direction of an attorney, rather, what matters is the motivation behind the material's preparation. Dkt. 119 at 3; *see also Wultz v. Bank of China, Ltd.*, 304 F.R.D. 384, 393–94 (S.D.N.Y. 2015).

Madden reiterates its position that Brandes' communications with her accountants are not protected by the attorney-client privilege and further argues that work product protections cannot

extend over an accounting firm's work when it was hired for business purposes.  Dkt. 121 at 3; *see also Hatfield*, 2010 WL 183522, at *2.

The work product doctrine "is intended to preserve the zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries."  *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)).  Unlike the attorney-client privilege, work product protection is not necessarily waived by disclosures to third persons.  *In re Pfizer Inc. Sec. Litig.*, No. 90-CV-1260, 1993 WL 561125, at *6 (S.D.N.Y. Dec. 23, 1993).  Instead, "the courts generally find a waiver of the work product privilege only if the disclosure 'substantially increases the opportunity for potential adversaries to obtain the information.'"  *Id.* (quoting *In re Grand Jury,* 561 F. Supp. 1247, 1257 (E.D.N.Y. 1982)).  Work product can consist of "opinion work product," such as "an attorney's mental impressions or legal theories," and "fact work product, such as factual investigation results."  *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 39 (E.D.N.Y. 2013).  As it relates to email correspondence, "core work product" includes "emails that describe mental impressions" and "litigation strategy."  *Nat'l Immigr. Project of the Nat. Laws. Guild v. U.S. Dep't of Homeland Sec.*, 842 F. Supp. 2d 720, 726 (S.D.N.Y. 2012).  To the extent that a communication only discusses routine or logistical matters, these communications are not protected by the work product doctrine.  *See GMO Gamecenter*, 2025 WL 1763262, at *11 (holding emails containing "no requests for or transmissions of legal advice and are merely transmittal emails and discussions of routine administrative and logistical matters are not within the scope of the attorney-client privilege or work product doctrine").

Here, Brandes asserts that she anticipated litigation with Madden "no later than May 8, 2023."  Dkt. 93 at 1.  It is plausible, therefore, that Brandes' 2023 and 2024 communications

14

could be protected by the work product doctrine.  A number of the documents in Exhibits D and E, however, contain communications involving Brandes, her counsel, and HCVT that either concern logistical matters or do not contain "mental impressions" or "litigation strategy."  *See Nat'l Immigr. Project of the Nat. Laws. Guild*, 842 F. Supp. 2d at 726.

As listed below, there are a number of documents that contain mental impressions or litigation strategy where either HCVT or Brandes' former colleagues are present on the emails. Unlike attorney-client privilege, the presence of HCVT or former colleagues on the emails does not waive the right to non-disclosure based on work product because HCVT and Brandes' former colleagues share "common litigation interests."  That is, they share an interest in properly assessing Madden's liability under the SPA's earn-out provisions.  *See Medinol, Ltd. v. Bos. Sci. Corp.*, 214 F.R.D. 113, 115 (S.D.N.Y. 2002) (holding work product protection is not waived where "an attorney engages the help of an accountant to assist with some aspect of the litigation, for the accountant is assisting the lawyer in developing a litigation objective and is thus enhancing the work product").  Communications involving Brandes, her counsel, and HCVT or involving Brandes, her former colleagues, and HCVT that are merely logistical communications or contain no core work product and are not protected by either attorney-client privilege or the work product doctrine and must be produced.  Applying these principles, the Court reviewed the documents submitted for *in camera* review (Dkt. 141) and reaches the following conclusions with respect to the post-2023 documents.

The following documents are not protected by the attorney-client privilege because of the presence of HCVT employees who are not acting in a translator role in satisfaction of the *Kovel* exception, nor do they contain protected work product, and must be produced:

Exhibit D:  217, 222, 383, and 384.

15

The following communications involving Brandes, her counsel, and HCVT contain protected work product that is not waived by the presence of HCVT and need not be produced:

Exhibit D:  406, 407, 421, and 498.

The following documents are communications involving Brandes, her counsel, and HCVT where HCVT is acting as a translator for counsel to satisfy the *Kovel* rule.  These documents are privileged and need not be produced:

Exhibit D:  391, 393, and 394.

The following documents are communications between Brandes and HCVT that were forwarded or exchanged with Brandes' former colleagues.  Except as set forth in the footnotes below, the redacted portions, in part, include communications between HCVT employees or between Brandes and HCVT employees that do not contain core work product material and, therefore, must be produced unredacted:

Exhibit E:  313[8], 369[9], and 371.[10]

The following documents are communications exchanged between Brandes and HCVT that contain work product and need not be produced:

Exhibit E:  509, 510, 514, and 515.

In the following document Brandes purports to redact one portion of a non-privileged email chain forwarded by Brandes to her counsel.  That portion is not an attorney-client

---

[8] Brandes may maintain as protected work product the redactions in connection with Brandes' email to Doron Bardov dated July l7, 2023 at 12:50 p.m. and Doron Bardov's email to Brandes dated July 17, 2023 at 12:03 p.m. Dkt. 141-5 at ECF page 6.

[9] Brandes may maintain as protected work product the redactions in connection with Brandes' email dated August 17, 2023 at 11:01 a.m., Mike Dreyer's email dated August 17, 2023 at 12:10 p.m., and Brandes' email dated August 16, 2023 at 4:42 p.m.  Dkt. 141-5 at ECF pages 10–13.

[10] Brandes may maintain as protected work product the redactions in connection with Brandes' email dated August 17, 2023 at 11:01 a.m., Mike Dreyer's email dated August 17, 2023 at 12:10 p.m., and Brandes' email dated August 16, 2023 at 4:42 p.m.  Dkt. 141-5 at ECF pages 17–20.

16

communication, rather, it contains an auto-generated message cautioning the receiver of the email that it is an external email. This was not properly redacted and shall be produced in full:

Exhibit E: 489.

## Conclusion

For the reasons set forth above, the Court grants in part and denies in part defendant's motion to compel (Dkt. 92-8). Plaintiff shall produce the documents as described above by March 30, 2026. Further, plaintiff shall review her privilege logs and produce any additional documents in accordance with the Court's ruling as to the documents reviewed *in camera*. By April 6, 2026, the parties are directed to meet and confer and file a joint letter advising the Court of the status of plaintiff's production of additional documents, if any, in accordance with the Court's rulings in this Memorandum and Order.

**SO ORDERED**

Dated: Brooklyn, New York
March 23, 2026

s/ James R. Cho
James R. Cho
United States Magistrate Judge

17