UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------- x

GLORIA BRANDES,                                       :
                                                     :
                            Plaintiff,               :
                                                     :               MEMORANDUM AND
              -against-                              :               ORDER
                                                     :
STEVEN MADDEN, LTD.,                                 :               No. 24-CV-73-LDH-JRC
                                                     :
                            Defendant.               :
                                                     :

--------------------------------------------------------------------- x

JAMES R. CHO, United States Magistrate Judge:

       Plaintiff Gloria Brandes ("plaintiff" or "Brandes") commenced this action against Steven

Madden, Ltd. ("defendant" or "Madden"), for alleged breach of the Earn-Out provisions of a

Stock Purchase Agreement ("the SPA") that effectuated the sale of Brandes' business, BB

Dakota, to Madden (the "Acquisition").[1]  *See generally* Compl., Dkt. 1.  Specifically, the parties

dispute the earnout paid by Madden in 2023 (referred to as the Year 3 Earnout payment) under

the SPA.  Now pending before this Court is plaintiff's motion to compel production of

defendant's litigation hold notices.  *See* Dkts. 139, 136-1 (same).  For the reasons set forth

below, the Court denies plaintiff's motion to compel.

## Background

       The Court assumes the parties' familiarity with the factual and procedural background of

this case.  As such, only the factual and procedural background relevant to the instant motion is

discussed below.

---

[1] The SPA entered into between Brandes and Madden on August 12, 2019 effectuated the sale of Brandes' women's apparel company, BB Dakota, to Madden.  Following the Acquisition, BB Dakota became part of Madden.

The dispute over the production of Madden's litigation hold notices dates back to approximately March 2025 when Brandes sought information regarding Madden's document and record retention policies as they relate to text messages.  *See* Min. Entry dated Mar. 11, 2025.  In response to the parties' discovery letters, Dkts. 56, 58, the Court ordered the parties to meet and confer regarding Madden's production of text messages and, "[i]f necessary, defendant shall provide plaintiff with a declaration setting forth defendant's preservation efforts as it relates to text messages and produce any applicable document retention policies, if any, as they relate to text messages."  *Id*.  After the parties were unable to resolve their dispute regarding the document retention policies (Dkts. 89-12 at 3, 90 at 3–4), on April 30, 2025, the Court ordered defendant to "provide plaintiff with a declaration regarding its preservation of text messages during the relevant time period."  Min. Entry dated Apr. 30, 2025.  The Court further ordered the partes to "continue to meet and confer regarding plaintiff's request that Madden produce its document retention policies for the relevant time period."  *Id*.

On May 6, 2025, Madden produced a declaration and documents relating to its preservation of text messages and document retention policy.  *See* Dkts. 92-2, 92-3, 92-8.  Not satisfied with Madden's production, Brandes requested that Madden "produce the litigation hold for this matter."  Dkt. 92-1 at 3; *see also* Madden's response, Dkt. 94.  On May 8, 2025, the Court ordered the parties to meet and confer regarding the text message preservation issue in light of Madden's recent production of its declaration and exhibit related to its preservation efforts.  *See* Min. Entry dated May 8, 2025.

On May 21, 2025, Brandes requested that Madden produce its litigation hold notices and produce a Rule 30(b)(6) witness in connection with Madden's document and record retention policies and its litigation hold notices.  Dkt. 101-1 at 1, 2–4.  On July 16, 2025, the Court granted

2

in part and denied in part Brandes' motion regarding Madden's document retention policy. *See* Min. Entry dated July 16, 2025. The Court ordered Madden to produce a privilege log in connection with its litigation hold notices. *Id.* Madden also agreed to produce two Rule 30(b)(6) witnesses to testify regarding Madden's document retention policies. *Id.*

On October 3, 2025, Brandes filed a motion to compel the production of Madden's litigation hold notices. Dkts. 139, 136-1 (same). On October 3 and 8, 2025, Madden filed responses to Brandes' motion. Dkts. 138, 142. On October 14, 2025, Brandes filed a reply in support of her motion. Dkt. 146-1. On November 7, 2025, the Court heard argument on Brandes' motion to compel and granted Brandes' request for further briefing in connection with her motion. *See* Min. Entry dated Nov. 7, 2025. On November 10, 2025, Brandes supplemented her motion, Dkt. 158, and on November 14, 2025, Madden responded to Brandes' supplemental briefing, Dkt. 161.

## Discussion

### I.    "Sword and Shield"

Brandes first argues that the Court should compel Madden to produce its litigation hold notices because Madden has relied on the contents of its privileged litigation hold notices as both a "sword and a shield." Dkt. 139 at 1. At the deposition of Madden's CFO, Zine Mazouzi ("Mazouzi"), Madden's counsel asked Mr. Mazouzi: "Do you recall if the lit hold that you have testified you received included directions regarding text messages?" Dkt. 142 at 3. Mr. Mazouzi responded, "Yes, I do." *Id.* When asked by Madden's counsel whether the litigation hold notice included text messages, Mr. Mazouzi responded, "Yes." *Id.* Brandes contends that this questioning by Madden "put the litigation holds in play," and that Madden further relied on this testimony during a status conference and in emails to Brandes' counsel. Dkt. 139 at 2.

3

In response, Madden argues that whether individuals were ordered to preserve text messages does not sufficiently reveal the contents of the litigation hold notices so as to waive the privilege. Dkt. 142 at 1. Whether a party is directed to preserve documents is not privileged information that, if disclosed, waives the privilege over the litigation hold notice. *See Roytlender v. D. Malek Realty, LLC*, No. 21-CV-52, 2022 WL 5245584, at *4 (E.D.N.Y. Oct. 6, 2022). Madden further argues that *Roytlender* is applicable here because the deposition witness only testified as to *whether* text messages were ordered to be preserved. The Court agrees.

Courts have held that litigation hold notices are protected by both attorney-client privilege and the work product doctrine. *See*, *e.g.*, *Roytlender*, 2022 WL 5245584, at *4 ("[L]itigation hold notices exchanged between attorneys and their clients are privileged communications and generally immune from discovery."); *Pearlstein v. BlackBerry Ltd.*, No. 13-CV-07060, 2019 WL 1259382, at *19 (S.D.N.Y. Mar. 19, 2019) (finding a litigation hold memo sent in anticipation of litigation to be protected by the work product doctrine). Attorney-client privilege, however, "cannot at once be used as a shield and a sword." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). A party cannot disclose some selected communications for self-serving purposes and the privilege may be waived if a party "asserts a claim that in fairness requires examination of protected communications." *Id.*

The information Madden has disclosed at the deposition of its CFO and further relied upon in emails and at a status conference is not considered privileged. The court held in *Roytlender* that "whether the witness was instructed to preserve documents [] is not protected by the attorney client privilege." *Roytlender*, 2022 WL 5245584 at *5. As in *Roytlender*, Madden did not reveal the content of the instructions, but instead only disclosed the fact that text messages were to be preserved. In fact, when plaintiff's counsel attempted to ask further

4

questions about the "concrete steps" included in the litigation hold notice, defendant's counsel instructed Mr. Mazouzi not to answer on the grounds that the information was protected by the work product doctrine.  Dkt. 142 at 3.

Further, even if Madden had disclosed privileged information regarding the contents of its litigation hold notices, Madden has not put the contents of the litigation hold notices "in play," as Brandes argues, so as to effect a waiver of privilege over the entirety of the litigation hold notices.  Dkt. 139 at 1.  To waive privilege over an entire document after disclosing some privileged part of that document, a party must "make a claim that in fairness requires examination of protected communications," and use the privilege "to prejudice [its] opponent's case or to disclose some selected communications for self-serving purposes." *Bilzerian*, 926 F.2d at 1292.  Madden does not affirmatively rely on the contents of its litigation hold notices as part of a claim or defense that the privileged information is needed to prove.  *See Windsor Sec., LLC v. Arent Fox LLP*, 273 F. Supp. 3d 512, 518 (S.D.N.Y. 2017) (collecting cases).  Madden has only referred to the at-issue deposition testimony in response to Brandes' claims that it did not order individuals to preserve text messages.  Dkt. 142 at 4–5.  Brandes also has not demonstrated how her case will be prejudiced by non-disclosure of the litigation hold notices. While Brandes indicates she intends to use the contents of the litigation hold notices to make a spoliation motion, Dkt. 158 at 1, as discussed below, Brandes primarily takes issue with the timing and recipients of the litigation hold notices.  Madden has already provided Brandes with this information.  *See* Min. Entry dated July 16, 2025; Dkt. 139-4 (privilege logs).  Brandes has not made any showing that the contents of the litigation hold notices are required for her anticipated motion.

## II.    Spoliation

The Court heard argument on Brandes' motion to compel at a conference on November 7, 2025.  *See* Min. Entry dated Nov. 7, 2025.  At the conference, Brandes argued that she had made the preliminary showing of spoliation required to compel production of the otherwise privileged litigation hold notices.  On November 10, 2025, Brandes filed a letter in further support of her argument that Madden's litigation hold notices should be produced because she has made a preliminary showing of spoliation.  *See* Dkt. 158.  Madden responded that Brandes' argument was made for the first time on reply and is therefore improper.  *See* Dkt. 161.  Even if Brandes had initially argued that she has made a preliminary showing of spoliation so as to render Madden's litigation hold notices discoverable, the Court finds that Brandes has made no such showing.

Although generally protected from discovery by the attorney-client privilege and work product doctrine, litigation hold notices may be discoverable where there has been a preliminary showing of spoliation.  *See Roytlender*, 2022 WL 5245584, at *4; *Harris v. City of New York*, No. 20-CV-2011, 2025 WL 1420424, at *1 (S.D.N.Y. Apr. 22, 2025).  "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999).  Courts have found that a preliminary showing of spoliation can be established by deposition testimony and the absence of a preservation order.  *See Harris*, 2025 WL 1420424, at *1 (finding a preliminary showing of spoliation where an employee of the defendant, who maintained key documents, was never asked to preserve any documents relevant to the lawsuit and testified at a deposition to such); *see also Tracy v. NVR, Inc.*, No. 04-CV-6541, 2012 WL 1067889, at *6 (W.D.N.Y. Mar. 26, 2012) (finding that it is

6

reasonable to find a preliminary showing of spoliation from deposition testimony demonstrating the destruction of documents or the absence of any preservation order).

Here, plaintiff has made no such preliminary showing of spoliation. Instead of relying on evidence such as deposition testimony demonstrating the destruction of documents or the absence of any litigation hold notices, Brandes has provided a list of what she calls "red flags" pertaining to Madden's document retention. Dkt. 146-1 at 1–2. Brandes' list of red flags includes the following: (1) Madden did not issue its first litigation hold until January 5, 2024, when it anticipated litigation as early as March 2023; (2) the first January 5, 2024 litigation hold notice only went to five employees, with one additional hold sent the same day; (3) Madden sent a litigation hold notice on November 26, 2024 to only three of the original six recipients; (4) Madden never sent a litigation hold notice to Mr. Steve Madden; (5) Madden has produced "virtually" no texts or emails between Mr. Steve Madden and the CEO, Ed Rosenfeld, on certain issues; (6) Madden's Rule 30(b)(6) witness on preservation testified that Madden does not have a company-wide preservation policy that covers text messages or emails; and (7) Madden did not engage a third-party vendor to handle text collection and back-up until December 16, 2024. Dkt. 146 at 1–2.

Brandes argues that she has sufficiently shown that Madden has "fail[ed] to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West*, 167 F.3d at 779. However, Brandes' critique of the timing and recipients of Madden's litigation hold notices does not amount to a showing of spoliation.

First, Madden issued its first litigation hold notices on January 5, 2024, the day after Brandes filed her Complaint. *See* Dkt. 1. This satisfies Madden's obligation to issue litigation hold notices at the outset of the litigation. *See In re Keurig Green Mountain Single-Serve Coffee*

*Antitrust Litig.*, 341 F.R.D. 474, 502 (S.D.N.Y. 2022) (parties must implement a litigation hold "at the outset of the litigation").  While Brandes argues that Madden should have issued its first litigation hold notice months earlier, Madden's issuance of its litigation hold notices the day after the litigation commenced does not amount to a showing of spoliation.  *See*, *e.g.*, *Centrifugal Force, Inc. v. Softnet Commc'n, Inc.*, 783 F. Supp. 2d 736, 742 (S.D.N.Y. 2011) (finding a party sending a litigation hold notice approximately one week after being served with a lawsuit does not amount to a showing of spoliation).

Second, Brandes takes issue with Madden's decision not to send the litigation hold notice to certain individuals, including Mr. Madden.  Madden reports, however, that the litigation hold notices were sent to "all of the agreed-to document custodians."  Dkt. 161 at 3.  Courts have required that "[d]iscovery from 'key players' in the litigation [] be preserved."  *Raymond v. City of New York*, No. 15-CV-6885, 2020 WL 1067482, at *9 (S.D.N.Y. Mar. 5, 2020) (quoting *Alter v. Rocky Point Sch. Dist.*, No. 13-CV-1100, 2014 WL 4966119, at *9 (E.D.N.Y. Sept. 30, 2014)).[2]  Madden further reports that Mr. Madden, not one of the agreed-to document custodians, has no relevant emails to produce and any relevant text messages have been produced already.  Dkt. 161 at 3.  Brandes has proffered no support for her contention that Mr. Madden was in possession of any relevant documents other than what has already been produced.  Brandes instead argues that there must have been spoliation because Madden did not produce texts or emails between Mr. Madden and Madden's CEO pertaining to the creation of Steve Madden Apparel, the decision to terminate the BB Dakota Brand, the style and look of Steve Madden

---

[2] Brandes notes that Madden's Rule 30(b)(6) witness testified that Madden did not have a preservation policy covering text messages and emails or a document retention policy before 2022.  Dkt. 146-1 at 2.  Whether Madden had such preservation policies in place does not support Brandes' claims of spoliation where, as here, litigation hold notices had been issued to the "agreed-to document custodians from whom Madden collected and produced documents."  Dkt. 161 at 3.

8

Apparel, and how Gloria Brandes reacted to the decision to terminate the BB Dakota brand.  Dkt.

146-1 at 2.  Brandes further notes the "paucity of Madden's production of texts . . . ."  *Id*.

Brandes, however, does not offer any evidence, such as deposition testimony, pointing to the

existence of such text messages or emails in the first place.  Courts have found a preliminary

showing of spoliation only when supported by a showing that no preservation notice was sent to

individuals in possession of relevant documents or that documents were destroyed.  *See Harris*,

2025 WL 1420424, at *1.

Accordingly, Brandes has not sufficiently established the necessary showing of spoliation

to warrant the production of Madden's litigation hold notices.

### Conclusion

For the foregoing reasons, the Court denies Brandes' motion to compel production of

Madden's litigation hold notices.

**SO ORDERED**

Dated: Brooklyn, New York
       March 23, 2026

s/ James R. Cho
James R. Cho
United States Magistrate Judge

9