UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
GLORIA BRANDES,                                      :
                                                   :
                      Plaintiff,                 :
                                                   :           MEMORANDUM AND
           -against-                         :           ORDER
                                                     :
STEVEN MADDEN, LTD.,                    :           No. 24-CV-73-LDH-JRC
                                                    :
                      Defendant.             :
                                                    :
------------------------------------------------------------------ x

JAMES R. CHO, United States Magistrate Judge:

Plaintiff Gloria Brandes ("plaintiff" or "Brandes") commenced this action against Steven Madden, Ltd. ("defendant" or "Madden"), for alleged breach of the Earn-Out provisions of a Stock Purchase Agreement ("the SPA") that effectuated the sale of Brandes' business, BB Dakota, to Madden (the "Acquisition").[1]  *See generally* Compl., Dkt. 1.  Specifically, the parties dispute the earnout paid by Madden in 2023 (referred to as the Year 3 Earnout payment) under the SPA.

On April 23, 2025, Brandes filed a motion for protective order in connection with Brandes' privileged communications.  *See* Dkt. 78.  On October 3, 2025, the Court granted in part and denied in part Brandes' motion.  *See* Dkt. 137.  Now pending before this Court is defendant's motion to compel plaintiff's compliance with the Court's October 3, 2025 Order ("Waiver Order").  *See* Dkt. 144.  For the reasons set forth below, the Court grants defendant's motion to compel.

---

[1] The SPA entered into between Brandes and Madden on August 12, 2019 effectuated the sale of Brandes' women's apparel company, BB Dakota, to Madden.  Following the Acquisition, BB Dakota became part of Madden.

**Background**

The Court assumes the parties' familiarity with the factual and procedural background of this case. As such, only the factual and procedural background relevant to the instant motion is discussed below.

As part of Madden's acquisition of BB Dakota, Madden acquired BB Dakota's assets, including BB Dakota's email servers. Dkt. 144 at 2. Madden sought production of Brandes' emails, arguing that Brandes had waived any claims of attorney-client privilege over them. *Id.* On April 23, 2025, Brandes filed a motion for protective order to preclude Madden's counsel in this action from reviewing Brandes' privileged email communications saved on Madden's servers. Dkt. 78. The Court granted in part and denied in part Brandes' motion for protective order. Dkt. 137. In particular, the Court granted Brandes' motion for protective order as to pre-acquisition emails with her deal counsel, but denied the motion as to post-acquisition emails with her deal counsel using a Madden-owned email address. Dkt. 137 at 18. The Court ordered Brandes to produce the documents requested by Madden as set forth in the Order by October 10, 2025. *Id.*

On October 14, 2025, Madden filed a motion to compel stating that Brandes had not complied with the Court's Waiver Order. Dkt. 144. While Brandes produced post-acquisition emails between Brandes using her Madden-owned email address and her deal counsel, Brandes withheld attachments to emails that contained pre-acquisition documents.[2] *Id.* at 1. Madden requests that it be permitted to access Brandes' post-acquisition emails itself saved on Madden's systems. *Id.* at 4. On October 22, 2025, Brandes filed her opposition to Madden's motion, Dkt. 149, and on October 27, 2025, Madden filed its reply in support of its motion, Dkt. 151.

---

[2] The at-issue documents include emails sent by both Brandes and Brandes' assistant, Corey Gionet, at Brandes' request from Madden-owned email addresses. Dkt. 144 at 2–3.

At a conference on November 5, 2025, the Court heard argument on Madden's motion to compel. *See* Min. Entry dated Nov. 5, 2025. On November 7, 2025, the Court granted Brandes' request to file supplemental briefing to address the question of whether Brandes could have accessed and transferred her pre-acquisition privileged documents to her counsel in any manner other than through the use of Madden-owned email addresses. *See* Dkts. 159, 162.

**Discussion**

The Court's October 3, 2025 Waiver Order held that Brandes did not waive attorney-client privilege over pre-acquisition communications with her deal counsel by transferring BB Dakota's servers to Madden as part of the sale of BB Dakota. Dkt. 137 at 12. This finding applied to communications in existence before Madden's acquisition of BB Dakota. *Id.* The Court also held that Brandes did not waive attorney-client privilege over pre-acquisition emails that outside counsel reviewed as part of unrelated litigation in state court. *Id.* at 14. The Court held that Brandes did, however, waive attorney-client privilege over post-acquisition emails with her deal counsel that she (or through her assistant) transmitted using Madden-owned email addresses. *Id.* at 18.

When Brandes made her production in connection with the Waiver Order, Brandes withheld zip files and pre-acquisition documents embedded as attachments in post-acquisition emails. Dkt. 144 at 1. Brandes and her assistant sent four emails post-acquisition to each other and to Brandes' deal counsel using Madden-owned email addresses. Dkt. 149 at 2. Those emails contained zip files with hundreds of documents created pre-acquisition. *Id.* Brandes produced the parent emails that included those attachments, but not the attachments themselves. Dkt. 144 at 2. Madden argues that the Waiver Order's holding that Brandes had waived her privilege over post-acquisition emails sent using Madden email addresses includes these

3

attachments to post-acquisition emails, even if the attachments were pre-acquisition documents. *Id.*

In response, Brandes argues that the email attachments, including communications created before Madden's acquisition of BB Dakota that had been transferred to Madden's servers, retain their privilege because the Court concluded that Brandes had not waived privilege as to those communications. Dkt. 149 at 2. According to Brandes, there is a dispositive difference between sending an email as an attachment and sending them in the body of the email. *Id.* at 2. Because Brandes only sent pre-existing communications and did not disclose their contents "in any meaningful sense," Brandes contends that only the emails transmitting entirely new requests for legal advice to her counsel post-acquisition involve a waiver of privilege. *Id.* at 3.

Brandes further argues that the SPA, which effectuated the sale of BB Dakota to Madden, protects her privilege over all pre-acquisition communications. Dkt. 159 at 1. According to Brandes, the SPA gave Brandes a "property right" in her pre-acquisition privileged communications, and the language of the SPA supersedes any language in Madden's Electronic Communications policy stating that employees have "no legitimate expectation of privacy." *Id.* at 2; *see also* Dkt. 137 at 2. Brandes believes that transmittal of pre-acquisition communications using Madden's email addresses after the acquisition does not waive Brandes' privilege because the SPA protects the privilege over any subsequently entered Madden Electronic Communications policy. Dkt. 159 at 3. Madden's Electronic Communications policy, according to Brandes, prohibited Brandes from accessing or transmitting pre-acquisition communications by any means without waiving the privilege because the policy covers all use of Madden's "network," and "all stored data" and is not limited to email. *Id.* at 2.

4

Madden counters that Brandes misconstrues the Court's Waiver Order and Madden's Electronic Communications Policy.  Dkt. 151 at 1; Dkt. 162 at 1.  The Court agrees.

First, Brandes is incorrect in stating that there is a meaningful difference between sending a communication as an attachment rather than in the body of an email when it comes to waiver of the attorney-client privilege.  Courts have regularly found that when privilege is waived over an email communication, the waived communication includes attachments or zip files whether or not the attachment is disclosed in the body of the email.  *See*, *e.g.*, *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 47 (E.D.N.Y. 2013) (finding documents sent as email attachments not privileged), *aff'd*, 29 F. Supp. 3d 142 (E.D.N.Y. 2014); *In re Application Sveaas*, 249 F.R.D. 96, 102 (S.D.N.Y. 2008) (ordering party to produce emails and their attachments when attorney-client privilege was waived).  In the Court's Waiver Order, the Court applied the factors from *In re Asia Glob. Crossing, Ltd.*, 322 B.R. 247, 258 (S.D.N.Y. 2005), and held that Brandes waived attorney-client privilege over post-acquisition emails when she transmitted those emails using Madden-owned email addresses.  Dkt. 137 at 18.  This means that Brandes' attorney-client privilege was waived over any post-acquisition communication among Brandes, her assistant, and her deal counsel sent on Madden-owned email addresses, including attachments to those emails.

Second, Brandes argues that her post-acquisition transmission of privileged communications using Madden-owned email addresses is at worst an inadvertent disclosure not amounting to a waiver of privilege.  *See* Dkt. 149 at 2.  Brandes' argument is unavailing.  Brandes claims that she took reasonable steps to prevent disclosure of her privileged communications by relying on the "protections of the SPA."  *Id.*  While the Court's Waiver Order found that the SPA demonstrated Brandes' intent to retain the confidentiality of her pre-

5

acquisition communications with her deal counsel when BB Dakota's servers were transferred to Madden, *see* Dkt. 137 at 10, the Court held that Brandes' transmission of emails using her Madden-owned email address waived the attorney-client privilege. *Id.* at 18. As the Court explained in the Waiver Order, "the SPA cannot, by itself, preserve Brandes' attorney-client privilege." *Id.* at 10. After applying the four-factor test from *In re Asia* that the Court considers when determining whether use of a company email address constitutes a privilege waiver, the Court found that Brandes' post-acquisition use of her Madden-owned email address waived any attorney-client privilege over the contents of those emails. *Id.* at 18. This holding was not limited to post-acquisition documents found in such emails, but rather applies to any communication transmitted post-acquisition. *Id.* Specifically, the Court's holding that Brandes waived her attorney-client privilege applies to the zip files or attachments containing pre-acquisition communications between Brandes and her deal counsel that Brandes sent post-acquisition using Madden-owned email addresses.

Third, Brandes' argument that she could not have transferred her privileged documents by some method other than by using Madden-owned email addresses because of the language of Madden's Electronic Communications policy is similarly unconvincing. *See* Dkt. 159. Madden's policy provides that "Steve Madden management retains the right to monitor and/or inspect all computer documents, systems, disks, voice mail, and E-mail, and may review any communication (including but not limited to personal IP accounts accessed from work or on work systems) on its systems for any legitimate purpose." *Id.* at 2. The policy further states that "[e]mployees should have **no legitimate expectation of** privacy when using the Company's computer and/or telecommunications systems." *Id.* (emphasis in original). Brandes argues that

this language "unambiguously" covers all means of potential transmission of her pre-acquisition communications with her deal counsel. *Id.*

As Madden notes, Brandes could have "printed them out at home, boxed them up, and Fed-Ex'd them to her counsel . . . exported them to a thumb drive, CD-ROM, external hard drive or other storage device and sent that to her counsel . . . [or] downloaded them to . . . one of her personal electronic devices and sent them using her personal email address." Dkt. 162 at 2. These options would not have required Brandes to communicate using one of Madden's "systems," as covered under Madden's Electronic Communications policy. *Id*. at 3. As Madden explains, Madden's policy does not address, and therefore does not cover, personal email[3] addresses. *Id*. at 3. Further, the policy does not cover printing or downloading documents to a thumb drive. *Id.* at 3. The policy's reference to "personal IP accounts" denotes an "internet protocol" account, not personal email. *Id.* Any argument Brandes relies on to claim that the language of Madden's Electronic Communications policy and the SPA conflict because Brandes could not have accessed pre-acquisition privileged communications without waiving the privilege is therefore incorrect. Brandes could have transmitted her privileged communications in a way that does not conflict with Madden's Electronic Communications policy and that does not waive her attorney-client privilege.

---

[3] Plaintiff did, in fact, communicate with her counsel using her *personal* email address. As Maddens notes, "Plaintiff emailed with counsel using her personal email address during the post-transaction period and has withheld these documents as privileged." Dkt. 162 at 3. Recognizing that plaintiff has not waived attorney-client privilege with respect to communications plaintiff had with her counsel using her *personal* email address, Madden does not seek production of those privileged documents. *Id*.

**Conclusion**

For the foregoing reasons, the Court grants Madden's motion to compel Brandes' compliance with the Court's October 3, 2025 Order.  By March 31, 2026, plaintiff shall produce the documents requested by defendant as set forth in the Court's October 3, 2025 Order, including any attachments to emails containing pre-acquisition documents.

**SO ORDERED**

Dated:  Brooklyn, New York
   March 24, 2026

s/ James R. Cho
James R. Cho
United States Magistrate Judge
